## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

AARON WILSON,

           Plaintiff,

     v.

M & M MANAGEMENT CO. and RED
WHITE AND BLUE THRIFT STORE,
INC.,[1]

          Defendants.

Civil No. 17-11597 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

GRAHAM FAVILLE BAIRD
LAW OFFICES ERIC A. SHORE, P.C.
TWO PENN CENTER
1500 J.F.K. BOULEVARD
SUITE 1240
PHILADELPHIA, PA 19102

    *Attorney for Plaintiff Aaron Wilson.*

STEVEN GERBER
MARIA TAVANO
OLA AKACHE NUNEZ
SCHOEMAN UPDIKE KAUFMAN & GERBER LLP
155 WILLOWBROOK BOULEVARD
SUITE 300
WAYNE, NJ 07470

    *Attorney for Defendant M & M Management Co.*

---

[1] It appears the parties concede that suit is only against M & M Management, Co. d/b/a Red, White, and Blue Thrift Stores, as Red, White, and Blue Thrift Stores is not a separate entity.

**HILLMAN, District Judge**

This is an employment case where Plaintiff Aaron Wilson claims Defendant M & M Management, Co. took adverse employment actions against him based on his race and in retaliation for previous complaints he had made against one of Defendant's supervisors.  Presently before the Court is Defendant's Motion for Summary Judgment.  For the reasons expressed below, this Court will grant Defendant's Motion for Summary Judgment.

**BACKGROUND**

The Court takes its facts from the parties' statements of material facts not in dispute.  The Court will note disputes where relevant.

Defendant, M & M Management Company d/b/a Red, White & Blue Thrift Stores ("M&M") operates a thrift store in West Berlin, New Jersey (the "West Berlin Store").  M&M employs a fleet of truck drivers to collect donated customers goods for resale. This is the only source of goods sold in M&M stores.  As such, the trucking operation is a central part of M&M's business model.  M&M has specific employment policies and procedures for its trucking division and prohibits unlawful discrimination and retaliation.  This policy and various other procedures and prohibitions are contained in an employee handbook (the "Handbook") that is provided to every employee.

M&M hired Plaintiff as a driver at the West Berlin Store in October 2013.  Plaintiff received a copy of the Handbook and signed an acknowledgement stating he had both received and read it.  The Handbook, under a "Rules of Conduct" heading provides "some examples of conduct that will result in disciplinary action or termination of employment" and specifically states it does not intend this to be "an exhaustive list of all types of impermissible conduct and performance."  (Tucker Decl., Ex. A 23.)  According to the Handbook, progressive discipline is preferred, but not required.

Generally, Plaintiff's work as a driver involved receiving a route of scheduled pick-ups, making each stop, retrieving the goods from the donors, and then loading and unloading his truck. During his duties, Plaintiff was subject to multiple instances of discipline between February 19, 2014 and January 12, 2016. Plaintiff was written up for the following infractions:

- Leaving his truck running and unattended;

- Complaining to dispatch about his route and the size of items he was told to pick up and then missing a scheduled pick-up;

- Failing to follow instructions for picking up donations on his route; and

- Repeatedly calling into the main store line, asking for help finishing his route, and being insubordinate with a supervisor.[2]

Plaintiff does not specifically deny the above bases for disciplinary action.

Plaintiff denies the following bases for disciplinary action:

- Picking up a UPS delivery of Christmas toys from a donor's home instead of their donation;

- Jumping off the loading dock and hurting his knee instead of using the safer method he was trained to use;

- Disobeying protocol by taking his route sheet out of the dispatch office without permission or notice to one of the "Head Drivers"; and

- Calling into the main store line instead of texting into dispatch when he had finished a certain portion of his route.

In opposing these bases for disciplinary action, Plaintiff cites his deposition where he stated the following:

---

[2] Plaintiff denies this, as stated. But, in his denial, he cites to no record fact to refute it. The deposition testimony cited only relates to calling into dispatch rather than texting when the texting mechanism used was malfunctioning. This is irrelevant to the separate factual assertion of whether he called in to (1) ask for help on his route or (2) was insubordinate to a supervisor.

- The December 15, 2014 warning concerning the mistaken pick-up of Christmas toys from a donor's home did not occur and his signature does not appear on the warning, (Pl.'s Opp'n Br., Ex. B 99:19-101:14);

- The February 20, 2015 warning concerning his accident at the loading dock is incorrect: he did not jump, but stepped down while holding onto the loading dock, (Pl.'s Opp'n Br., Ex. B 105:5-106:19);

- The August 6, 2015 warning concerning taking his route sheet without permission is incorrect because Plaintiff could not have taken his route sheet without knowing which one was his – and that was only determined when they were handed out (Pl.'s Opp'n Br., Ex. B 103:10-104:13); and

- The October 2, 2015 warning concerning calling into dispatch rather than texting was incorrect because the texting mechanism was malfunctioning, preventing Plaintiff from updating dispatch other than by calling, (Pl.'s Opp'n Br., Ex. B 120:14-121:24).

Plaintiff also generally asserts that some of these actions were taken in retaliation for his complaints or based on his race, as other employees who were not African-American were treated differently when it came to discipline. As is suggested by Plaintiff's above opposition, the parties also present facts concerning the nature of complaints made by Plaintiff.

Plaintiff testified in his deposition that Assistant Store Manager Scott Fitzpatrick, a white male, called him a "fucking peon" sometime in 2014.  On a separate occasion in 2014, Plaintiff also testified that Fitzpatrick "ran up" on him and he was forced to back up into a coat rack.  Fitzpatrick stared him down as if he was going to hit him.  It appears Plaintiff had difficulty articulating what is was about these incidents that suggested they were racially motivated.  (Pl.'s Opp'n Br., Ex. B 58:20-61:4.)  Although Plaintiff testified in his deposition that Fitzpatrick targeted African-American drivers with his inappropriate and unprofessional behavior, Plaintiff did not provide any specific examples nor did he state this was racially motivated.  (Pl.'s Opp'n Br., Ex. B 59:20-61:4.)  It appears the basis for this statement was that the majority of M&M drivers were African-American or Latino.

After receiving this treatment at the hands of Fitzpatrick, Plaintiff complained to Store Manager Dennis Rodriguez. Rodriguez said he would intercede with Fitzpatrick on Plaintiff's behalf and that Plaintiff could bring any complaints he may have had to him.  Plaintiff also called M&M's corporate office and complained about Fitzpatrick's conduct to National Supervisor Robert Tucker.  Tucker later visited Plaintiff while he was out on his route.  Tucker states in a declaration that Plaintiff never complained to him about Fitzpatrick's allegedly

racially motivated behavior, just about not being able to eat on the loading dock while others were allowed to smoke. (Def.'s Mot. for Summ. J., Decl. of Robert Tucker ¶19.) Plaintiff stated in his deposition that he did complain to Tucker about Fitzpatrick's behavior and said to him he thought it was racially motivated. (Pl.'s Opp'n, Ex. B 126:16-127:21.)

Finally, Plaintiff called in and complained to M&M's corporate office on January 13, 2016 to dispute his January 12, 2016 suspension for excessive calls to dispatch and insubordination to Rodriguez. The substance of Plaintiff's complaint to corporate on this occasion was not that the suspension was racially motivated, but that it was incorrect.

On January 14, 2016, Plaintiff was terminated, according to Defendant, for excessive infractions. By Defendant's count, Plaintiff had received "eight write-ups, including two suspensions, in less than two years . . . issued by four distinct supervisors." (Def.'s SOMF ¶ 29.) According to Tucker, once he received Plaintiff's January 13, 2016 complaint and reviewed Plaintiff's disciplinary history, he decided along with CEO Bruce Vincent to terminate Plaintiff and instructed Rodriguez to do so. (Def.'s Mot. for Summ. J., Decl. of Robert Tucker ¶¶ 22-23.) Plaintiff asserts he was terminated because of his previous "race discrimination complaint to Bob Tucker." (Pl.'s Opp'n SOMF ¶ 29.)

On November 14, 2017, Plaintiff filed this matter before the Court. Plaintiff's Complaint has two counts, one under Title VII for unlawful employment discrimination on the basis of race and retaliation and one under the New Jersey Law Against Discrimination ("NJLAD") for retaliation and creation of a hostile work environment.

On October 26, 2018 Defendant filed a Motion for Summary Judgment. Plaintiff filed his opposition on November 19, 2018 and Defendant filed a reply on November 29, 2018. Defendant's Motion for Summary Judgment is therefore ripe for adjudication.

## ANALYSIS

### A.    Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.

### B.    Motion for Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  <u>Id.</u>  "In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence 'is to be believed and

all justifiable inferences are to be drawn in his favor.'"

<u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)

(citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

<u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); <u>see</u> <u>Singletary v. Pa.</u>

<u>Dep't of Corr.</u>, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although

the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the

moving party may be discharged by "showing"—that is, pointing

out to the district court—that there is an absence of evidence

to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 257.

### C.  Defendant's Motion for Summary Judgment

Defendant's Motion for Summary Judgment asserts Plaintiff's three claims cannot survive summary judgment.  First, Defendant argues Plaintiff's disparate treatment claim fails because Plaintiff (1) cannot state a prima facie case or, in the alternative, (2) cannot establish pretext.  Second, Defendant

argues Plaintiff's hostile work environment claim also fails as a matter of law.  Third, Defendant argues Plaintiff's retaliation claim fails as a matter of law.  Plaintiff opposes Defendant's Motion for Summary Judgment on all three claims.  This Court will address each in turn.

Before doing so, this Court notes Plaintiff's claims are analyzed in this case under the McDonnell Douglas burden-shifting framework.  First, a "plaintiff must establish a prima facie case of discrimination." Parikh v. UPS, 491 F. App'x 303, 307 (3d Cir. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Once a plaintiff has established his prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action.  Under the law,

> [t]he employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision . . . . The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.

Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original) (citations omitted).

If the defendant satisfies this burden of production, a plaintiff must then show that the reason produced was mere

pretext for discrimination.  To show pretext, the relevant

standard requires a plaintiff to:

> "demonstrate such weaknesses, implausibilities,
> inconsistencies, incoherencies, or contradictions in the
> employer's proffered legitimate reasons for its action
> that a reasonable factfinder could rationally find them
> 'unworthy of credence.'"  <u>Fuentes</u>, 32 F.3d at 765.  In
> simpler terms, he must show, not merely that the
> employer's proffered reason was wrong, but that it was
> so plainly wrong that it cannot have been the employer's
> real reason.

<u>Keller v. Orix Credit All.</u>, 130 F.3d 1101, 1109 (3d Cir.

1997).

In other words, as the Third Circuit has held:

> to defeat summary judgment when the defendant answers
> the plaintiff's prima facie case with legitimate, non-
> discriminatory reasons for its action, the plaintiff
> must point to some evidence, direct or circumstantial,
> from which a factfinder could reasonably either (1)
> disbelieve the employer's articulated legitimate
> reasons; or (2) believe that an invidious discriminatory
> reason was more likely than not a motivating or
> determinative cause of the employer's action.

<u>Fuentes</u>, 32 F.3d at 764.  A plaintiff's evidence must "allow a

factfinder reasonably to infer that each of the employer's

proffered non-discriminatory reasons . . . was either a post hoc

fabrication or otherwise did not actually motivate the

employment action (that is, the proffered reason is a pretext)."

<u>Id.</u> (citations omitted).  With those standards in mind, this

Court will examine Defendant's arguments.

a. <u>Whether Plaintiff's Disparate Treatment Fails as a
Matter of Law</u>

12

Defendant presents two arguments as to why Plaintiff's Title VII disparate treatment claim cannot survive summary judgment. First, Defendant argues Plaintiff cannot establish a prima facie case. Second, Defendant argues Plaintiff cannot show Defendant's legitimate, nondiscriminatory reason was mere pretext. Plaintiff disagrees.

### i. Whether Plaintiff has Established his Prima Facie Case

Defendant argues Plaintiff has not established his prima facie case for two reasons. First, Defendant argues Plaintiff cannot establish an adverse employment action as to some aspects of his claim. Defendant asserts verbal and written warnings cannot legally give rise to a Title VII claim. Plaintiff does not appear to challenge this contention. Second, Defendant argues Plaintiff cannot establish an inference of discrimination as to the remaining aspects of his claim. Here, Defendant asserts Plaintiff is wholly unable to establish circumstances giving rise to even an inference of discrimination.

To establish a prima facie case under Title VII for disparate treatment, Plaintiff must show the following: (1) he "belongs to a protected class"; (2) he "was qualified for the position"; (3) he "suffered an adverse employment action"; and (4) "the adverse action occurred under circumstances that give rise to an inference of discrimination." Davis v. City of

Newark, 285 F. App'x 899, 903 (3d Cir. 2008) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-12 (3d Cir. 1999)). Plaintiff must establish these four elements "by a preponderance of the evidence." Ditzel v. Univ. of Med. & Dentistry of N.J., 962 F. Supp. 595, 602 (D.N.J. 1997).

Defendant is correct that both verbal and written warnings are legally insufficient to support a Title VII claim for disparate treatment. In order for Plaintiff to establish specific conduct as "an adverse employment action," it "must be 'sufficiently severe as to alter the employee's compensation, terms, conditions, or privileges of employment or to deprive or tend to deprive [him] of employment opportunities or otherwise adversely affect his . . . status as an employee.'" Davis, 285 F. App'x at 903 (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1296-97 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)) (internal quotation marks omitted).

A "warning which does not result in any material change to [a p]laintiff's employment (pay or status) is insufficient to constitute an adverse employment action." Colson v. Cablevision MFR, Inc., No. 05-cv-5639, 2008 U.S. Dist. LEXIS 18488, at *14 (D.N.J. Mar. 11, 2008) (citing Dooley v. Roche Labs, Inc., No. 04-2276, 2007 U.S. Dist. LEXIS 10467, at *27-28 (D.N.J. Feb. 15, 2007)). See also Urey v. Grove City Coll., 94 F. App'x 79, 81

n.2 (3d Cir. 2004) (citing <u>Weston v. Pennsylvania</u>, 251 F.3d 420 (3d Cir. 2001)) (finding "verbal and written warnings" which did not effect hours worked, type of work, or decrease wages were legally insufficient to establish an adverse employment action). To the extent the verbal and written warnings given to Plaintiff in this case did not negatively affect Plaintiff's hours worked, type of work, or wages the Court will dismiss all claims premised upon them.

This Court will address the rest of Defendant's arguments in the pretext section, as "'[t]he burden of establishing a prima facie case of disparate treatment is not onerous'" and Defendant's arguments are more appropriate to address at the pretext stage of the <u>McDonnell Douglas</u> test. <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 261, 270-71 (3d Cir. 2010) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)). Accordingly, the Court will dismiss those claims premised on non-adverse actions and address the remaining disparate treatment claims, those based on Plaintiff's January suspension and termination, in the pretext analysis <u>infra</u>.

## ii. Whether Plaintiff has Established Pretext

Assuming for the sake of argument that Plaintiff has established his prima facie case, Defendant argues that Plaintiff has failed to present sufficient evidence of pretext. Before addressing pretext on the merits, it is important to

establish Defendant's legitimate, non-discriminatory reason for
the (1) suspension and (2) termination.

Defendant asserts the reason for Plaintiff's suspension was
because he called into dispatch repeatedly, even after being
asked to stop and because he was insubordinate with a superior.
Defendant asserts the reason for Plaintiff's termination was
because he had received "eight write-ups and two suspensions in
less than two years . . . [which] implicated a myriad of issues,
from straightforward egregious errors, carelessness related to
safety, and insubordinate refusal to follow company protocols."
(Def.'s Mot. for Summ. J. 13.)  These reasons meet Defendant's
burden of production and give the Court the proper context in
which to consider the parties pretext arguments.

To show pretext, the relevant standard requires a plaintiff
to:

> "demonstrate such weaknesses, implausibilities,
> inconsistencies, incoherencies, or contradictions in the
> employer's proffered legitimate reasons for its action
> that a reasonable factfinder could rationally find them
> 'unworthy of credence.'"  Fuentes, 32 F.3d at 765.  In
> simpler terms, he must show, not merely that the
> employer's proffered reason was wrong, but that it was
> so plainly wrong that it cannot have been the employer's
> real reason.

Keller v. Orix Credit All., 130 F.3d 1101, 1109 (3d Cir.
1997).

In other words, as the Third Circuit has held:

to defeat summary judgment when the defendant answers
the plaintiff's prima facie case with legitimate, non-
discriminatory reasons for its action, the plaintiff
must point to some evidence, direct or circumstantial,
from which a factfinder could reasonably either (1)
disbelieve the employer's articulated legitimate
reasons; or (2) believe that an invidious discriminatory
reason was more likely than not a motivating or
determinative cause of the employer's action.

Fuentes, 32 F.3d at 764.

This Court must consider Defendant's argument as to each
the suspension and termination. As to those, Defendant argues
Plaintiff has not presented any evidence that would support
pretext. Defendant asserts the only possible evidence Plaintiff
has provided is inadmissible hearsay[3] concerning whether white
drivers received a suspension for engaging in similar conduct.
Defendant also points to the absence in the record of any

---

[3] Generally, the Third Circuit has held that "[h]earsay
statements that would be inadmissible at trial may not be
considered for purposes of summary judgment." Smith v. City of
Allentown, 589 F.3d 684, 693 (3d Cir. 2009) (citing Shelton v.
Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 223 n.2 (3d
Cir. 2000)). But, even if a statement presented on summary
judgment is considered hearsay, in the Third Circuit "it can be
considered on a motion for summary judgment [if] it is capable
of being admissible at trial." Petruzzi's IGA Supermarkets v.
Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)
(citing J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d
1524, 1542 (3d Cir. 1990)) (emphasis added). Because these
hearsay statements by Al Joslin and others could be admissible
at trial if the declarant testified as to his or her personal
knowledge, this Court may consider these statements. See id.
(considering hearsay at the summary judgment stage because
"Petruzzi's IGA simply has to produce the Southern Tier
principal to give this testimony"). Regardless, even assuming
the substance of these statements, Plaintiff is unable to show
pretext.

comparators with similar disciplinary histories who were treated more favorably.

Plaintiff counters by stating "Defendant does not offer credible evidence to challenge Plaintiff's testimony that other drivers were calling into dispatch on the date of Plaintiff's suspension and that Plaintiff was suspended while the white drivers were not." (Pl.'s Opp'n Br. 8.) Plaintiff does not challenge whether he has presented sufficient evidence to support a disparate treatment claim based on his termination. Otherwise, Plaintiff does not dispute that he has not provided evidence proving pretext for his disparate treatment claim. Instead, Plaintiff almost exclusively discusses his retaliation claim. The Court will consider three categories of evidence: comparator evidence, actions by Fitzpatrick, and discipline received by Plaintiff.

### 1. Whether Plaintiff has Presented Legally Sufficient Comparator Evidence

Plaintiff's asserts that others similarly situated were treated differently – i.e., Plaintiff cites comparator evidence in support of his disparate treatment claim. Plaintiff has provided citation to the Court for his comparator evidence relating to his suspension. But, Plaintiff has failed to provide citation to the Court, for comparator evidence relating

to his termination.[4]  It appears the only reference to comparator

evidence is as follows:

> Q. Okay.  I think we can move on from Scott for now.
> You said that the other facts that you contend that
> you believe supports your race claim is when you were
> suspended.
>
> So now we're talking about January of 2016.  This
> was a couple days before you were fired, correct?
>
> A. Yes.
>
> Q. You said that there were others that were also
> calling in that were not suspended?  Yes?
>
> A. Yes
>
> Q. Who were the other folks that you believe were
> doing the same thing you were?
>
> A. It was Al, Roger.  I don't know his last name.
>
> Q. So are you talking about Al Jocelyn [sic] and he
> was the head driver, right?
>
> A. Yes.
>
> Q. I'm looking at basically an employee list.  I'm not
> pulling up a Roger.  Is it possible you're off about
> that name?
>
> A. No. I'm correct.
>
> Q. Anyone else?
>
> A. I know someone.  I can't remember the person, but
> me and Al was speaking about it on the conversation
> you hear on the phone.  He's the one that brung it up.

---

[4] In Plaintiff's briefing, Plaintiff cites to "Exhibit A," which
is his complaint in his action.  This Court cannot consider
these citations at the summary judgment stage as these are
allegations, not record evidence.  Therefore, Plaintiff has
failed to provide comparator evidence for his disparate
treatment claim relating to his termination.

Q. So you believe that your suspension was based because Al was also calling in and he didn't get suspended.  Another person Roger who you don't know his last name was always calling in and didn't get written up or suspended?

A. Yes.

Q. And are you aware of how many times Al Jocelyn [sic] called in the day you got suspended?  Well, let me put it this way.  You were not driving with Al I assume?

A. No.

Q. Did he tell you how many times he called in?

A. He said he called in a lot of times.  That was the conversation I recorded.

Q. And he's the head driver.  You were a driver, correct?

A. Yes.

Q. So the head driver has other responsibilities that a driver does not, correct?

A. No.  He wasn't head driver then.  Al wasn't head driver at that time.

Q. And you don't know the substance of his call ins, correct?

A. I can only go by what he told me.

Q. And what did he tell you?

A. He said he kept calling and doing the same thing I was doing.

Q. What were you doing?

A. Asking for help.  Asking about a stop.  Asking about a zip code.  When you're on the road, there's numerous things you're asking about because GPS don't take you exactly where you need to be, so you have to verify a lot of the stops.

Q. And isn't it true that it was Dennis or D who was on the phone with you that day telling you to stop calling in and just continue your routes? Don't call in?

A. Told me stop bitching.

Q. But it was Dennis who said that?

A. Yes.

(Pl.'s Opp'n Br., Ex. B 62:4-65:2.)

Defendant is correct: Plaintiff has not presented comparator evidence that would support a disparate treatment claim. Defendant is correct for two reasons. First, the comparator evidence presented by Plaintiff contains insufficient detail.[5] "To prove disparate treatment, a plaintiff must show that a comparator employee was similarly situated to him in all relevant respects." Amfosakyi v. Frito Lay, Inc., 496 F. App'x 218, 224 (3d Cir. 2012) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). Plaintiff has presented no evidence that any of the employees who were treated differently were similarly situated in any respect, much less any relevant respect. In fact, most of the so-called comparators are unnamed and unknown to Defendant and the Court, and possibly even

---

[5] To be clear, Defendant is not arguing – as Plaintiff believes – that Plaintiff's evidence on this point is not credible, but that assuming its veracity, it is legally insufficient. This argument is proper on a motion for summary judgment and Defendant need not present credible evidence to counter Plaintiff's evidence, as Plaintiff suggests.

Plaintiff.  The Court cannot compare individuals to Plaintiff
that it does not know.

Second, even assuming that Plaintiff had presented the
evidence necessary for this Court to determine he and his
comparators were sufficiently similar, the conduct of Plaintiff
is admittedly different than that of his comparators.  As the
Third Circuit has stated, "a comparator employee . . . [must be]
similarly situated to [a plaintiff] in all relevant respects . .
. including whether the comparator employee had 'engaged in
similar conduct without such differentiating or mitigating
circumstances as would distinguish [his] conduct or the
employer's treatment of [him].'"  Amfosakyi, 496 F. App'x at 224
(citing Holifield, 115 F.3d at 1562; quoting Radue v. Kimberly-
Clark Corp., 219 F.3d 612, 617–18 (7th Cir. 2000)) (emphasis
added).

While Plaintiff alleges that Al Joslin, another
unidentified driver, Roger, and possibly others, were not given
as severe of discipline for calling into dispatch repeatedly,
Plaintiff fails to allege that these other drivers also (1)
complained about their routes or (2) were insubordinate towards
their supervisor.  The Court cannot infer differing treatment
was based on racial animus when the conduct was different.  In
other words, Plaintiff has not provided comparators where the
only variable that is different is race.  For either of the two

22

reasons stated supra, this Court cannot consider comparator
evidence.

As stated supra, Plaintiff has not provided record citation
to the Court of any comparators related to his termination.
Thus, for the same reasons, this Court is unable to consider
comparator evidence as it relates to Plaintiff's termination.
Accordingly, this Court will not consider comparator evidence
either for Plaintiff's suspension or termination.

## 2. Whether Fitzpatrick's Actions are Legally Supportive of Pretext

Plaintiff has also cited actions by Fitzpatrick which he
believes were racially motivated.  Those actions include calling
Plaintiff a "fucking peon" and staring down Plaintiff, backing
him into a coat rack, and looking like he was going to punch
him.  Defendant argues these incidents are irrelevant to the
pretext determination because (1) there is no indication these
actions were racially motivated and (2) the actions are
temporally distant and were by an individual who was not a
decisionmaker on the adverse action at issue.

There are two reasons why these actions do not help to
satisfy Plaintiff's prima facie case.  First, Plaintiff has not
provided evidence sufficient to show Fitzpatrick's actions were
racially motivated.  While it is clear – according to both
parties – that Fitzpatrick was unprofessional and even may have

disliked Plaintiff, there is no indication in the record that his dislike of Plaintiff was because of Plaintiff's race or that his unprofessional actions were motivated by race. In fact, Plaintiff testified in his deposition that Fitzpatrick was a bully or harassed "[a]lmost everyone." (Pl.'s Opp'n Br., Ex. B 59:20-25.) While it is true that Plaintiff testified the majority of those harassed were "black or Latino, Mexican," he did not state he believed Fitzpatrick harassed them because of their race, instead saying "I can't speak for them." (Pl.'s Opp'n Br., Ex. B 60:18-61:4.) Additionally, while calling someone a "peon" is undoubtedly rude and hurtful, peon does not appear to have a racial connotation.[6] The Court cannot find an inference of discrimination in these actions.

Second, Fitzpatrick was not involved in Plaintiff's suspension or termination.[7] Even assuming that the word peon

---

[6] A review of definitions in the Merriam-Webster dictionary supports this conclusion. According to Merriam-Webster, a peon is "a member of the landless laboring class in Spanish America" or "a person who does hard or boring work for very little money: a person who is not very important in society or organization." Peon, Merriam-Webster.com Dictionary. While the Court notes historically "peonage" may refer to "[i]llegal and involuntary servitude in satisfaction of a debt," in reference to practices "in Spanish America, and especially in Mexico, and in the territory of New Mexico," the word "peonage" was not used in this case. Peonage, Black's Law Dictionary (11th ed. 2019).

[7] The Court does note, for the record, that Fitzpatrick was involved in earlier discipline of Plaintiff, but this discipline is not the subject of Plaintiff's disparate treatment claim.

includes a racial connotation or that Fitzpatrick's actions were racially motivated, it does not allow the Court to infer discrimination here.  As has long been the case in the Third Circuit, "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992).  There is no indication in the record that Fitzpatrick was involved in either Plaintiff's suspension or termination decisions.

Additionally, these actions occurred around two years before Plaintiff's complained of suspension and termination. Fitzpatrick's actions are legally insufficient to support pretext.  Id. at 547 ("If we were to hold that several stray remarks by a nondecisionmaker over a period of five years, while inappropriate, were sufficient to prove that Wolf's associate evaluation and partnership admission process were so infected with discriminatory bias that such bias more likely motivated Wolf's promotion decision than its articulated legitimate reason, we would spill across the limits of Title VII.").

The Court therefore finds Fitzpatrick's actions are legally insufficient to be considered for purposes of pretext.

> ### 3. Whether Plaintiff's Disputes as to the Correctness of Some Disciplinary Actions is Legally Supportive of Pretext

Finally, the Court will consider whether any of the arguments made by Plaintiff concerning the disciplinary actions may be supportive of pretext. Plaintiff makes three arguments: (1) the write-ups were for de minimis infractions, (2) Rodriguez testified he sometimes struggled to meet the pickup schedule, and (3) Rodriguez thought one write-up should have been designated a "policy violation" rather than a "misconduct."[8] Defendant argues that either Plaintiff's arguments are unsupported by record evidence or are legally irrelevant.

The Court agrees with Defendant. Plaintiff's assertion that these were "de minimis infractions" is based on an allegation in his complaint. The Court cannot consider allegations at the motion for summary judgment stage but may only rely upon evidence of record. There is nothing in the record here which Plaintiff points to that supports his assertion that some write-ups were for de minimis infractions.

Moreover, this type of argument is legally irrelevant. As the Third Circuit has routinely held, a "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise,

---

[8] Although Plaintiff does not make these arguments specifically concerning the disparate treatment claim – instead asserting these arguments in support of his retaliation claim – the Court will consider them for the disparate treatment claim as well.

shrewd, prudent, or competent." <u>Fuentes</u>, 32 F.3d at 765.  It is
not for this Court to second-guess an employer's decision as to
whether an infraction is serious or minor.  The Court will not
consider Plaintiff's argument concerning the severity of his
infractions.

Whether another employee struggled to meet the demands of
the job is also not legally relevant to the question of whether
Plaintiff's suspension or termination is unworthy of credence.
The Court views this as another attempt at asserting a
comparator argument.  Again, however, Plaintiff has failed to
provide sufficient evidence for the Court to make a
determination that the driver, Rodriguez, or the conduct was
sufficiently similar to allow comparison.

Finally, whether the February 2015 warning was categorized
correctly is of no moment.  The testimony of Rodriguez was that
he agreed with the substance of the write-up but disagreed with
its categorization.  Plaintiff does not state that this
miscategorization led to improper discipline, future improper
discipline, or had any bearing on the termination decision.
Moreover, it does not bear on the question of whether the reason
presented by Defendant for Plaintiff's suspension and
termination was unworthy of credence – nor does it show that
either of these actions were taken for a discriminatory reason.

AS with Plaintiff's other two reasons, this is legally
irrelevant to the pretext determination.

Finally, the Court notes that Plaintiff disputes the
factual bases of some, but not all, of the discipline he
received. Plaintiff presents no argument in his briefing as to
why this is relevant to his case. The Court finds this argument
is also legally irrelevant, in this case, to the pretext
analysis. Even assuming Plaintiff did not commit the four
infractions he cites, Plaintiff committed four other
infractions. Plaintiff cites to nothing in the record which
would suggest it would be improper for Defendant to have
suspended or terminated him for any of the other four
infractions which he does not contest.

Plaintiff provides no indication of whether the
decisionmakers in this case even knew whether the basis for the
contested infractions were incorrect. It is not enough to say
the decision to terminate was based on erroneous discipline,
Plaintiff must at least show that the decisionmakers knew it was
erroneous. This would go some way towards showing the reason
given for Plaintiff's termination was pretextual. Plaintiff has
given no indication whether that was the case here.

Taken together, the Court finds no reasonable jury would
either (1) disbelieve Defendant's articulated legitimate reasons
for suspension and termination of Plaintiff; or (2) believe that

an invidious discriminatory reason was more likely than not a motivating or determinative cause of Plaintiff's suspension or termination.  Accordingly, this Court will dismiss Plaintiff's Title VII claims in their entirety.

  b. <u>Whether Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law</u>

Defendant reads Plaintiff's Complaint to include a hostile work environment claim in Count II.  This has been asserted under the NJLAD only.  Defendant argues Fitzpatrick's actions – the only basis for a hostile work environment claim – was neither racially motivated nor sufficiently frequent or severe to allow this claim to proceed past summary judgment.  Plaintiff does not oppose Defendant's argument in any way, which suggests to this Court that Plaintiff has abandoned any hostile work environment claim.[9]  In the interest of completeness, the Court will address Defendant's arguments on this point.

As cited by the Third Circuit:

"When a black plaintiff alleges racial harassment under the LAD, she must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [race]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [African American] believe that (4) the conditions of employment

---

[9] For the record, the Court notes Plaintiff's Complaint states: "Defendant also created and fostered a hostile work environment as set forth above" under Count II.  (Pl.'s Compl. ¶ 44.)  This appears to be Plaintiff's attempt to state a hostile work environment claim.

are altered and the working environment is hostile or abusive.'"

Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005)

(quoting Taylor v. Metzger, 706 A.2d 685, 688-89 (N.J. 1998))

(alterations in original) (finding the Title VII and NJLAD

hostile work environment claims are "strikingly similar").[10]

   As discussed supra, Plaintiff has not provided record

evidence which supports the assertion that Fitzpatrick's actions

were racially motivated. See Oguejiofo v. Bank of Tokyo

Mitsubishi UFJ LTD, 704 F. App'x 164, 170-71 (3d Cir. 2017)

(finding behavior such as "yelling, intimidation, [and]

mistreatment" is insufficient to state a hostile work

environment claim unless the actions are racially motivated).

Without such evidence, Plaintiff's hostile work environment

claim may not proceed past summary judgment because Plaintiff

has failed to provide evidence concerning the first element.

   Even assuming, solely for the sake of argument, that

Fitzpatrick's actions were racially motivated, the Court

additionally finds they were not of the severity or

pervasiveness required to support a hostile work environment

claim. Generally, "'offhanded comments, and isolated incidents

(unless extremely serious)' are not sufficient to sustain a

---

[10] In other words, even if the hostile work environment claim was asserted under Title VII, the Court would arrive at the same result.

hostile work environment claim." <u>Caver</u>, 420 F.3d at 262

(quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788

(1998)). Fitzpatrick's conduct, as it related to Plaintiff, was

both limited and isolated.

Defendant's citation to <u>Henson v. U.S. Foodservice, Inc.</u>

shows how even repeated, racially motivated, and seemingly

severe conduct may not rise to the level necessary to support a

NJLAD hostile work environment claim. 588 F. App'x 121 (3d Cir.

2014). There, one of the defendant's employees "often made

offensive comments while [the plaintiff] and other African-

American employees ate lunch together in the break room,"

including "if they were eating chicken and grape soda, joke[s]

about African-Americans' genital sizes and watching basketball .

. . [and calling the plaintiff's] lunch break the 'BET lunch.'"

<u>Id.</u> at 123-24. Even considering these "offensive remarks" the

Third Circuit found "these remarks alone were insufficient to

create a hostile work environment . . . [because] the[] comments

were [not] so severe and pervasive that a reasonable person in

[plaintiff's] position would believe that the conditions of his

employment were altered." <u>Id.</u> at 127.

The conduct here does not rise to the level found in <u>Henson</u>

where the Third Circuit affirmed the dismissal of the NJLAD

hostile work environment claim. Fitzpatrick's conduct was

limited to one comment and one incident. While, like the Third

Circuit in <u>Henson</u>, the Court does not condone Fitzpatrick's behavior, it cannot allow a NJLAD hostile work environment claim to proceed on these grounds. The conduct was neither severe nor pervasive enough. Accordingly, to the extent it was asserted, this Court will dismiss Plaintiff's NJLAD hostile work environment claim.

### c. Whether Plaintiff's Retaliation Claim Fails as a Matter of Law

Defendant asserts that Plaintiff's retaliation claim must be dismissed as it fails as a matter of law. The Court notes for clarity that Plaintiff's Complaint only alleges retaliation as it relates to his termination, not to previous disciplinary matters.[11] Defendant argues dismissal is appropriate because either Plaintiff has failed to show his prima facie case or because Plaintiff has failed to show pretext. Defendant asserts Plaintiff has not shown a prima facie case because the only protected activity occurred in 2014 and Plaintiff has not provided record evidence showing protected activity within a time period that would allow this Court to infer causation.

---

[11] It appears in his briefing Plaintiff asserts the retaliatory conduct also included disciplinary action that was taken previous to his termination. The Court will not consider these assertions in analyzing Plaintiff's retaliation claim, as Plaintiff's Complaint is clear in stating the adverse action the retaliation claim is based on is his termination. (Pl.'s Compl. ¶¶ 38, 43.) Plaintiff's disparate treatment claim, on the other hand, is based on both the suspension and termination.

Assuming Plaintiff has met his prima facie case, Defendant asserts Plaintiff has provided no other facts which could support a finding of pretext.

Plaintiff argues strenuously that his termination was based on retaliation for his complaints to Defendant concerning his treatment by Fitzpatrick and his suspension for his actions on January 12, 2016. As with Plaintiff's disparate treatment claim, there is an evidentiary issue. While Plaintiff does cite a portion of his deposition to show that he complained to Tucker about Fitzgerald's actions sometime in early 2014, Plaintiff does not provide a record citation to show he complained of racial discrimination in January 2016. As stated previously, the Court may only consider record evidence, not allegations from a complaint. As a result, this Court may only consider the protected activity that occurred sometime in 2014.[12]

Generally, courts in this District have found that retaliation under Title VII and NJLAD does not require separate analysis.

> To make out a prima facie claim for unlawful retaliation
> under Title VII and the NJLAD, a plaintiff must produce
> evidence that: (1) she engaged in activity protected by
> Title VII and the NJLAD; (2) her employer took an adverse
> employment action against her either after or
> contemporaneous with her protected activity; and (3) a

---

[12] For the record, the Court notes Defendant disputes Plaintiff complained of racial discrimination in 2014, but the Court assumes the veracity of Plaintiff's assertion for purposes of deciding this motion.

causal connection exists between that adverse employment action and her protected activity.

Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 423 (D.N.J. 2003) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 286 (3d Cir. 2001); Craig v. Suburban Cablevision, Inc., 660 A.2d 505, 508 (1995)). As with Plaintiff's disparate treatment claim, the Court finds it more appropriate to consider Defendant's causation argument in the pretext analysis. See Abramson, 260 F.3d at 289 (finding a "broad array" of circumstantial evidence may satisfy the causation prong of the prima facie case). Thus, this Court will engage in the familiar McDonnell Douglas burden-shifting framework. See Jorrin v. Lidestri Foods, Inc., No. 11-2064 (NLH/AMD), 2013 U.S. Dist. LEXIS 44475, at *36-46 (D.N.J. Mar. 28, 2013) (applying burden-shifting to retaliation claims).

Defendant relies upon the same legitimate, non-discriminatory reason for termination as the Court noted supra: Defendant asserts the reason for Plaintiff's termination was because he had received "eight write-ups and two suspensions in less than two years . . . [which] implicated a myriad of issues, from straightforward egregious errors, carelessness related to safety, and insubordinate refusal to follow company protocols." (Def.'s Mot. for Summ. J. 13.) The Court finds, as it did supra, that Defendant has met its burden of production.

Therefore, the Court must turn back to Plaintiff to determine whether this reason was mere pretext.

Plaintiff's pretext argument, as stated by Plaintiff, is that "there is record evidence proffered by Plaintiff showing that the termination of Plaintiff was pre-textual and illegitimate." (Pl.'s Opp'n Br. 13.) The evidence to which Plaintiff is referring is unclear, as Plaintiff does not thereafter cite record evidence. The only other arguments the Court can discern from Plaintiff's briefing is that (1) temporal proximity existed between Plaintiff's call to Tucker in January 2016 and his termination, (2) a comment from Rodriguez that Plaintiff's termination came from corporate, (3) the write-ups were for de minimis infractions, (4) Rodriguez testified he sometimes struggled to meet the pickup schedule, and (5) Rodriguez thought one write-up should have been designated a "policy violation" rather than a "misconduct."

The third, fourth, and fifth arguments were discussed and found irrelevant to a determination of pretext, <u>supra</u>. The Court relies on the reasoning discussed therein. The first argument was also discussed and found inapposite, <u>supra</u>. Since this argument does not rely on record evidence, it cannot be considered by the Court. That leaves the Court with the second argument.

Whether Plaintiff's termination came from corporate or from the West Berlin store does not bear on whether retaliation occurred. The only possible bearing it may have on the issue of pretext is whether the termination was in response to Plaintiff's complaint concerning Fitzpatrick years earlier. But, that complaint – standing alone - is too temporally distant to support an inference of causation, much less a finding of pretext. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." (citations omitted)). Therefore, the timing between Plaintiff's complaint and his termination is insufficient, without more, to support pretext here.

Accordingly, this Court finds Plaintiff has failed to produce record evidence which may support pretext for his retaliation claim. Without a showing of pretext, this Court cannot allow these retaliation claims to proceed, whether under Title VII or NJLAD. These claims will be dismissed.

**CONCLUSION**

Based on the foregoing analysis, Defendant's Motion for Summary Judgment will be granted.  This case will be dismissed in its entirety.

An appropriate Order will be entered.


Date: June 27, 2019                 s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.